**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BLACK BEAR ENERGY SERVICES, INC.,<br>    Plaintiff,<br><br>v.<br><br>YOUNGSTOWN PIPE & STEEL, LLC<br>d/b/a DNV ENERGY, LLC<br>    Defendant. | Civil Action No. 15-50 |
| YOUNGSTOWN PIPE & STEEL, LLC<br>d/b/a DNV ENERGY, LLC,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>BLACK BEAR ENERGY SERVICES, INC.,<br>JOSEPH E. KOVACIC, III,<br>MARKWEST ENERGY PARTNERS, L.P.,<br>OHIO GATHERING COMPANY, L.L.C.,<br>MARKWEST ENERGY OPERATING<br>COMPANY, L.L.C., MARKWEST UTICA<br>EMG CONDENSATE, L.L.C., MARKWEST<br>UTICA EMG L.L.C., and MARKWEST<br>LIBERTY MIDSTREAM & RESOURCES,<br>L.L.C.<br>    Counterclaim Defendants. | |

**OPINION**

CONTI, Senior District Judge

**I.   Introduction**

      This litigious case, which is six and one-half years old, arises out of a contract dispute between counterclaim plaintiff Youngstown Pipe & Steel, LLC, ("YPS") and

counterclaim defendant Black Bear Energy Services, Inc. ("Black Bear").[1] Pursuant to the contract, YPS was to manufacture skid piping for Black Bear that allegedly complied with the standards set forth by counterclaim defendants MarkWest Energy Partners, L.P., Ohio Gathering Company, L.L.C., MarkWest Energy Operating Company, L.L.C., MarkWest Utica EMG Condensate, L.L.C., MarkWest Utica EMG, L.L.C., and MarkWest Liberty Midstream & Resources, L.L.C., (collectively "MarkWest"). This case is trial ready; indeed, the court resolved the parties' motions for summary judgment and held a pretrial conference at which it resolved, among other things, the parties' motions in limine, and objections to exhibits.

During the pretrial conference held on September 24, 2020, the court resolved a motion in limine filed by MarkWest in which it sought to prohibit YPS from introducing evidence that Dennis Loosli ("Loosli"), a former project manager for MarkWest, engaged in unethical conduct. (ECF No. 295.) MarkWest argued the evidence should be excluded because: (1) it is not relevant under Federal Rule of Evidence 401; and (2) to the extent it is relevant, its probative value is substantially outweighed by the danger of unfair prejudice and confusing the jury under Federal Rule of Evidence 403. (Id.) YPS argued in response, among other things, that Loosli requested a "monetary gift" from YPS and YPS' refusal to pay the monetary gift is the reason that Loosli retaliated against YPS by "switching the Skids' order of delivery." (ECF No. 298.) As fully set forth on the record, the court granted in part and denied in part MarkWest's motion in limine. It held:

---

1   Joseph E. Kovacic, III, ("Kovacic"), who is the president of Black Bear, is also a named counterclaim defendant in this case.

> The evidence of Mr. Loosli's conduct that is related directly to this project with respect to YPS, that evidence will be able to come in. And if any of the unethical conduct relates to other projects, other parties, that will be precluded.

(Hearing Transcript ("H.T.") 9/24/2020 (ECF No. 312) at 39.) The court's narrow ruling addressed the issue before the court, i.e., whether Loosli's allegedly unethical conduct is relevant, and, if it is, whether its probative value is substantially outweighed by the danger of unfair prejudice or confusing the jury. The parties did not raise, and the court did not consider, the admissibility of evidence of Loosli's allegedly unethical conduct under any other rule of evidence, e.g., the rule against hearsay set forth in Federal Rule of Evidence 802.

During the pretrial conference, MarkWest argued to the court that YPS in its response to the motion in limine, which was filed on August 20, 2020, asserted *for the first time* that it had evidence that Joe Greco ("Greco"), vice president of business development for Black Bear, requested a $40,000.00 "gift" for Loosli from Vincent Pelini ("Pelini") and Mark Canter ("Canter"), both of YPS. YPS intends to rely upon that evidence to argue to the jury that Loosli wrongfully rejected and destroyed YPS' skids to retaliate against YPS for not providing him with the $40,000.00 "gift." (ECF No. 322 at 4.) The court in response to MarkWest's argument about this "newly" asserted evidence permitted MarkWest and YPS to conduct limited depositions of Greco and Pelini to address "any potential bribes being undertaken." (H.T. 9/24/2020 (ECF No. 312) at 38.)

The depositions were taken on or about October 8, 2020. On November 2, 2020, MarkWest filed the pending "motion for leave of court to file motion in limine/motion for reconsideration of court's ruling on motion in limine" ("MarkWest's motion" or the

3

"pending motion"). (ECF No. 313.) MarkWest argues that Pelini's testimony that Greco requested a $40,000.00 gift from YPS for Loosli should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice to MarkWest and would confuse the jury because YPS' retaliation theory is based upon speculation. MarkWest also argues that the testimony by Pelini and Canter is double hearsay, which is inadmissible at trial. YPS argues in opposition to MarkWest's motion that MarkWest did not provide the court a proper basis upon which to reconsider its decision that evidence about Loosli's unethical conduct relating to the project at issue in this case is admissible, and, in any event, the evidence that Greco requested a $40,000.00 bribe from YPS for Loosli is relevant and is not hearsay because Greco's statements constitute an admission by a party opponent.

For the reasons set forth in this opinion, MarkWest's motion, which this court construes as a motion in limine and has been fully briefed by the parties, will be granted and evidence of statements made by Pelini and Canter about Greco requesting a $40,000.00 gift from YPS for Loosli will be excluded from evidence at trial. Even assuming the evidence is relevant, it constitutes inadmissible double hearsay.

## II. Discussion

### A. Good cause exists to modify the pretrial case management order to permit MarkWest to file a motion in limine to address the admissibility of Pelini's and Canter's testimony that Greco stated Loosli requested a $40,000.00 bribe under the rule against hearsay.

This court ruled at the pretrial conference that evidence about Loosli's unethical conduct is relevant under Rule 401, and, therefore, *admissible* if the conduct is related directly to the project giving rise to this litigation. The court explained that if the evidence

about Loosli's allegedly unethical conduct concerned the project at issue in this case, its probative value would not be substantially outweighed by the danger of unfair prejudice or confusing the jury under Rule 403. The court's ruling applied to evidence that Greco requested a $40,000.00 bribe for Loosli from YPS. In other words, this court held that, among other things, evidence that Greco requested a $40,000.00 bribe from YPS is relevant and would not be excluded from evidence under Rule 403. At the time this court issued that ruling, the depositions of Pelini and Canter about that matter had not occurred and neither MarkWest nor YPS raised any argument about the admissibility of statements made by Pelini and Canter under the rule against hearsay. After MarkWest filed the pending motion, the court sua sponte ordered the parties to address whether the evidence relied upon by YPS to show that Greco requested $40,000.00 from YPS for Loosli constituted inadmissible hearsay.

    MarkWest in its pending motion and reply brief argues that the evidence is inadmissible because: (1) the probative value of that evidence is substantially outweighed by the danger of unfair prejudice to MarkWest; and (2) Greco's statements to Pelini and Canter are hearsay and any statements made by Loosli to Greco about the alleged requests for a bribe are also hearsay. YPS argues that MarkWest did not provide the court a proper basis to reconsider its ruling about the admissibility of the evidence, and, in any event, the evidence is admissible.

    MarkWest's argument that the evidence is inadmissible hearsay is in essence a new motion in limine because the court did not address that issue at the pretrial conference. As YPS argues, this court issued a pretrial case management order providing that motions in limine were due on or before August 10, 2020. MarkWest

seeks to file this new motion in limine to address the inadmissibility of Pelini's and Canter's testimony beyond that deadline.

Pursuant to Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." "[T]he existence of 'good cause' turns on a variety of factors…" Trask v. Olin Corp., 298 F.R.D. 244, 267 (W.D. Pa. 2014). The Third Circuit Court of Appeals has recognized that the court should consider a party's "diligence" to determine whether good cause exists to modify a scheduling order. Premier Comp Sols., LLC v. UPMC, 970 F.3d 316, 319 (3d Cir. 2020). One authority has also explained:

> In general, if the party seeking relief can show that the deadlines cannot reasonably be met despite the party's diligence, relief may be given….Similarly, relief may be granted if the court finds that the movant has not unduly delayed the action and that the opponent will not be prejudiced by the modification….When the modification is necessitated by acts of the opposing party or by the opponent's failure to act, relief also has been deemed appropriate.

6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, Modifying Scheduling Orders § 1522.1 at 313-14 (3d 2010). The court will consider the foregoing factors to determine whether "good cause" exists to modify the pretrial case management order and permit MarkWest to file this new motion in limine at this stage in the case.

As discussed above, motions in limine were due on before August 10, 2020. MarkWest filed its motion in limine with respect to Loosli's alleged unethical conduct and Rules 401 and 403 on that date. On August 17, 2020, YPS filed its second pretrial statement, which provided:

> There are still some answers which YPS would like to have but may never have, e.g., **whether YPS's refusal to pay Loosli a "gift"** played into Counterclaim Defendants' decision to scrap YPS' Skids. These questions regarding motive are, however, irrelevant to the resolution of this case, which could not come quickly enough for YPS.

(ECF No. 297 at 9 n.6 (emphasis added).) The second pretrial statement did not provide any detail about the evidence showing YPS' refusal to pay Loosli, e.g., whether the evidence was testimonial or documentary. On August 20, 2020, YPS filed its response in opposition to the motion in limine about Loosli's alleged unethical conduct. (ECF No. 298.) The response provided, in pertinent part:

> The evidence at trial will show that Loosli requested a monetary gift from Black Bear and YPS. Loosli had reason to retaliate against YPS for YPS' refusal to pay Loosli that monetary "gift," while Counterclaim Defendant Joseph E. Kovacic, III ("Kovacic"), Black Bear's president, did pay for a Loosli family vacation to Disney World. Loosli and Kovacic did in fact retaliate, switching the Skids' order of delivery, both of which delayed YPS' completion of the Skids. Loosli and Black Bear then rejected the Skids purportedly for weld defects.

(ECF No. 298 at 2.) The response in opposition did not provide further detail about YPS' evidence that Loosli requested a personal payment from YPS. On September 2, 2020, MarkWest filed a reply brief in support of its motion in limine with respect to Loosli's alleged unethical conduct. (ECF No. 306.) The reply brief, in pertinent part, provided:

> For the first time in the multi-year history of this case, YPS alleges that Mr. Loosli "requested a monetary gift from YPS." Doc 298 at 4. YPS further alleges for the first time that YPS's refusal to pay Mr. Loosli the requested "monetary gift" resulted in Mr. Loosli retaliating by switching the order of delivery for the skids and rejecting the skids due to weld defects. At no point during the extensive discovery taken in this case did YPS state that Mr. Loosli attempted to extract a bribe from YPS. On March 27, 2018, MarkWest's counsel questioned YPS's corporate designee about alleged "kickbacks" and the deponent did not mention anything about Mr. Loosli (or anyone else) requesting a monetary gift from YPS. Relevant portions of the YPS Corporate Designee Deposition Transcript (with highlights added for the Court's convenience) are attached as Exhibit 1. YPS's summary

>judgment papers also do not assert that Mr. Loosli asked YPS for a monetary payment. See Docs. 187, 199, 205, 209, 217, 220, 240, 247, 249, 263, and 272.

(Id. at 3.)

On September 24, 2020, this court held the pretrial conference during which it decided the motions in limine. MarkWest at the conference raised with this court that YPS belatedly asserted it had evidence that Loosli requested a bribe from YPS. (H.T. 9/24/2020 (ECF No. 312) at 28.) After prompting by the court, counsel for YPS for the first time provided detail about its evidence that Loosli requested a bribe from YPS and represented that Pelini and Canter would testify that Greco stated Loosli asked for $40,000.00 from YPS. (Id. at 34.) The court ruled on the motion in limine with respect to the admissibility of Loosli's alleged unethical conduct under Rule 401 and 403 and permitted the parties to conduct limited depositions of Pelini and Greco. Pelini's deposition took place on October 8, 2020 and transcript was prepared. On November 2, 2020, MarkWest filed the pending motion. (ECF No. 313.)

Based upon the foregoing, the court finds that good cause exists to modify the pretrial case management order and permit MarkWest to file a motion in limine to address the admissibility under the rule against hearsay of the statements of Pelini and Canter that Greco told them that Loosli requested a bribe from YPS. First, MarkWest could not meet the court's August 10, 2020 deadline for the filing of a motion in limine because—despite the age and litigious nature of this case—YPS did not disclose the evidence that Greco told Pelini and Canter that Loosli requested a bribe until the *pretrial conference*. After MarkWest learned about the details of Pelinie's and Canter's statements, Pelini's deposition was taken on October 8, 2020 and a transcript was prepared. Less than a

month later, MarkWest filed its pending motion. Under those circumstances, YPS' actions caused MarkWest's inability to meet the August 10, 2020 deadline for the filing of motions in limine. YPS will not be prejudiced by the modification of the pretrial case management order because it will not delay trial[2] in this case; indeed, pending before this court is YPS' motion for leave to file a second summary judgment motion outside the timeframe set forth by the court's summary judgment case management order. Based upon the foregoing, the court finds there is good cause to modify the pretrial case management order with respect to the filing of a motion in limine limited to the admissibility under the rule against hearsay of Pelini's and Canter's testimony that Greco stated Loosli requested a bribe from YPS.

To promote efficiency and expedite the resolution of this issue, the court will construe MarkWest's pending motion as a motion in limine. MarkWest and YPS fully briefed issues about the admissibility of Pelini's and Canter's testimony under the rule against hearsay, and, therefore, neither party is prejudiced by the court's effort to expedite the disposition of this evidentiary issue.

### B. Pelini's and Canter's statements that Greco told them Loosli requested a bribe from YPS constitute inadmissible double hearsay.

#### 1. Applicable Law

##### a. Generally—Rule Against Hearsay

Pursuant to Federal Rule of Evidence 802, hearsay evidence is generally inadmissible at trial. FED. R. EVID. 802. There are certain exceptions to the

---

[2] Trial in this case has been delayed by the COVID-19 pandemic. It is currently scheduled for trial in November 2021.

inadmissibility of hearsay, but none of them were raised by the parties. See e.g., FED. R. EVID. 803-804. Hearsay is defined as a statement that "the declarant does not make while testifying at the current trial or hearing…and…[is] offer[ed] in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c)(1)-(2). The Rules of Evidence, however, provide two categories of statements that satisfy the foregoing definition, but are not considered hearsay, i.e., are excluded as not being hearsay. A witness' own prior statements offered for the truth of the matter asserted are not hearsay. FED. R. EVID. 801(d)(1). Likewise, an opposing party's statement offered for the truth of the matter asserted is not considered hearsay in certain circumstances, e.g., when the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" or when the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(D)-(E). Here, the exclusions to the rule against hearsay that are implicated are set forth in Rule 801(d)(2)(D) and (E).

      **i.**      **Rule 801(d)(2)(D)**

Under Rule 801(d)(2)(D), a statement is not hearsay if: (1) the statement is offered against a party; and (2) the statement is by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. Lippay v. Christos, 996 F.2d 1490, 1497 (3d Cir. 1993) (citing FED. R. EVID. 801(d)(2)(D)). The proponent of the statement's admissibility has "the burden to demonstrate that…[the declarant] made…[the] statement within the scope of an agency relationship with [the party against whom the statement will be admitted]." Lippay, 996 F.2d at 1497. The court must apply "federal common law rules

of agency, rather than relying on the agency law of the forum[,] in determining whether…[a] statement comes within the Rule." Id. (recognizing that "the Federal Rules of Evidence do not define 'agent' or 'servant,'" and Congress intended "the Federal Rules of Evidence [to] have uniform nationwide application").

One district court has explained:

> "Because a corporation can act only through its employees, a statement by a corporate official…can certainly be considered an admission by a corporate defendant." United States v. Brothers Constr. Co., 219 F.3d 300, 310–11 (4th Cir.), cert. denied, 531 U.S. 1037, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). "The corporation's agent need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority." Id. at 311 (citation omitted). "Thus, this rule requires that when making an admission on behalf of the defendant, the declarant be both authorized and acting within the scope of employment." U.S. v. Riley, 621 F.3d 312, 338 (3d Cir. 2010). Mathis v. Monza, 2013 WL 1058867, *2 (W.D. Pa. March 14, 2013) ("For Rule 801(d)(2)(D) to apply, the statement must concern matters within the scope of the declarant's agency or employment.") (citing Riley, 621 F.3d at 338). "[B]eing a direct decision-maker, of course, constitutes strong proof that a statement was made within the scope of employment[.]" Riley, 621 F.3d at 338 (citation omitted).

United States v. Bhimani, 492 F. Supp. 3d 376, 387 (M.D. Pa. 2020). "[A]n employer[, however,] is not vicariously responsible for each statement made by its employees. In order for such a statement to be admissible, 'it is necessary that the content of the declarant's statement concern the scope of her agency.'" Mathis v. Monza, No. CIV.A. 11-450, 2013 WL 1058867, at *3 (W.D. Pa. Mar. 14, 2013), aff'd, 530 F. App'x 124 (3d Cir. 2013) (quoting Loncosky v. Wal–Mart Stores, Inc., 1997 U.S. Dist. LEXIS 18546, 1997 WL 732465, at *3 (E.D.Pa.1997)). "The appropriate focus is whether the speaker was in fact authorized to act for his or her employer concerning the matter about which the employee spoke." Id.

### ii. Rule 801(d)(2)(E)

For a co-conspirator's statement to be admitted under Federal Rule of Evidence 801(d)(2)(E), three conditions must be satisfied:

> (1) There must be independent evidence establishing the conspiracy in connecting the declarant and defendant to it;
>
> (2) The statement must have been made in furtherance *of* the conspiracy; and
>
> (3) It must have been made during the course of the conspiracy.

United States v. Ammar, 714 F.2d 238, 245 (3d Cir. 1983).

In order to submit co-conspirator statements to the jury, the court must determine that the proponent of the statement's admissibility has "established the existence of the alleged conspiracy and the connection of each…[participant] with it by a clear preponderance of the evidence independent of the hearsay declarations." United States v. Continental Group Inc., 603 F.2d 444, 457 (3d Cir. 1979). The preponderance standard simply requires the proponent of the statement's admissibility to present sufficient proof leaving the trial judge to find "'that the existence of the contested fact is more probable than its non-existence.'" Ammar, 714 F.2d at 250.  The court is not required to hold a preliminary hearing to make the determination of the conspiracy and the declarant's connection to it.  Id. at 246.  The court may conditionally, or provisionally, admit the statement "subject to a later finding of a conspiracy established by the preponderance of independent evidence."  United States v. DePeri, 778 F.2d 963, 981 (3d Cir. 1986).  The court must place its determination that a conspiracy existed that involved a party and the declarant on the record prior to submitting the statement to the jury for their consideration.  Ammar, 713 F.2d at 246. Once the co-conspirator's statements are admitted, they should go "to the jury without special instruction."  Id. at 249.

The "in furtherance" requirement of Rule 801(d)(2)(E) is generally given a broad interpretation.  DePeri, 778 F.3d at 981.  The court of appeals explained in Ammar that "[s]tatements between co-conspirators which provide reassurance, serve to maintain trust and cohesion among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy [.]" Ammar, 714 F.2d at 252.  These

statements made to members of the conspiracy, "are more than 'mere narratives' of past events." Id.

The "in furtherance" requirement and the "during the conspiracy" requirement are "closely linked." Id. at 253. A conspiracy continues while "co-conspirators remain fully capable of carrying out their purpose." Id. A conspiracy "is presumed to continue until its objective is achieved." Id. The party opposing the admission of the statement under Rule 802(d)(20(E) bears the burden of showing a conspiracy was terminated, i.e., that the conspiracy's "ends had been so frustrated or its means so impaired that its continuation was no longer plausible." Id. at 254.

### b. Hearsay within Hearsay

Federal Rule of Evidence 805 provides: "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." FED. R. EVID. 805; Langbord v. United States Dep't of Treasury, 832 F.3d 170, 189 (3d Cir. 2016); Prescott v. R & L Transfer, Inc., 111 F. Supp. 3d 650, 662 (W.D. Pa. 2015) ("Plaintiff has failed to show that each level of the hearsay statements is admissible, and therefore, Rader and Page will not be permitted to testify about the hearsay statements that they heard from Bennett.").

### 2. Analysis

### a. Parties' Positions

MarkWest argues, among other things, that the statements of Pelini and Canter, which YPS intends to introduce at trial to prove that Greco requested a $40,000.00 bribe from YPS, are inadmissible "double hearsay." Specifically, MarkWest objects to the testimony: (1) by Pelini that Greco told Pelini during an in-person meeting (at which

Canter was present) that "Dennis Loosli is looking for $40,000.00 from you" (ECF No. 313-1 at 6-7, 14); and (2) by Canter that Greco told Canter during a telephone call that "Loosli was going to be looking for $40,000.00" (id. at 25-26).

YPS intends to rely upon Pelini's and Canter's testimony that Greco told them Loosli wanted a personal payment of $40,000.00 from YPS to argue to the jury that Loosli wrongfully rejected YPS' skids to retaliate against YPS for not giving him $40,000.00. Under those circumstances, YPS is seeking to offer (1) Greco's statements to Pelini and Canter, and (2) Loosli's statement to Greco, all of which are out-of-court statements, *for the truth of the matter asserted*. In other words, YPS intends to rely upon "double hearsay" or "hearsay within hearsay" to prove that Loosli told Greco that he wanted a $40,000.00 payment from YPS. YPS, therefore, has the burden to show that (1) Greco's statements to Pelini and Canter, and (2) Loosli's statement to Greco, are not hearsay, i.e., they each fall within Rule 801(d)(2), or that an exception to the hearsay rule applies to each statement. FED. R. EVID. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."); Thomas v. Bronco Oilfield Servs., 503 F. Supp. 3d 276, 291 (W.D. Pa. 2020). YPS argues that Greco's alleged statements to Canter and Pelini and Loosli's alleged statement to Greco are not hearsay because they fall within Rule 801(d)(2)(D) and (E). The parties' arguments and each statement's admissibility under the rule against hearsay will be discussed below.

### b. Greco's Statements to Canter and Pelini

To satisfy Rule 801(d)(2)(D), YPS must offer into evidence Greco's statements against a party for whom he served as an agent. At the time Greco allegedly made the

15

statements to Pelini and Canter, he was employed by Black Bear; there was no evidence proffered that he was an agent of MarkWest. YPS, however, does not seek to introduce Greco's statements against Black Bear to prove its breach of contract claim against Black Bear.³ The best the court can tell is that YPS seeks to introduce Greco's statements to Pelini and Canter to prove a civil conspiracy to commit spoliation by MarkWest, Black Bear, and Kovacic. Thus, Rule 801(d)(2)(D) is not the appropriate rule under which Greco's statements may be admissible at trial because Greco is not the agent of MarkWest. Rule 801(d)(2)(E), however, is implicated because YPS is alleging that MarkWest and Black Bear are coconspirators in a conspiracy to commit spoliation.

As discussed above, for an out-of-court statement offered for the truth of the matter asserted to be excluded from the rule against hearsay under Rule 802(d)(2)(E), the statement must be offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy." In other words, the statement must be made during the conspiracy's existence. At this stage, YPS did satisfy its burden to show that it is more likely than not that Black Bear and MarkWest were members of a conspiracy when Greco allegedly told Pelini and Canter that Loosli requested a $40,000.00 personal payment.

The only conspiracy alleged by YPS in this case is the alleged conspiracy to spoliate evidence⁴ among MarkWest, Black Bear, and Kovacic. This court held in its

---

³   YPS did not make any showing about the relevancy of Greco's alleged statements to Pelini and Canter to its breach of contract claim against Black Bear or to any of its defenses asserted against Black Bear's claims.

⁴   The court in In re National Century Financial Enterprises, Inc., Investment Litigation, 604 F. Supp. 2d 1128, 1153 (S.D. Ohio 2009), explained:
   A civil conspiracy is " 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for

summary judgment opinion that there is evidence of record from which a reasonable jury could find that MarkWest, Black Bear, and Kovacic conspired to destroy the skids to disrupt YPS' case, i.e., they conspired to destroy evidence in anticipation of this litigation. There is no evidence of record, however, to show that—at the time Greco allegedly told Pelini and Canter that Loosli sought a $40,000.00 personal payment from YPS—MarkWest and Black Bear had already conspired to cause YPS harm by spoliating the skids. Pelini testified that Greco allegedly made the statements about Loosli in or around September 2014 through mid-October 2014. The evidence of record shows that MarkWest awarded Black Bear the contract for the skids in October 2014. Under those circumstances, YPS failed to show that it is more likely than not that Black Bear and MarkWest were co-conspirators to spoil evidence at the time Greco told Pelini and Canter that Loosli requested a $40,000.00 personal payment from YPS. Thus, YPS

---

      one alone, resulting in actual damages.' " Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866 (Ohio 1995) (quoting LeFort v. Century 21–Maitland Realty Co., 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645 (Ohio 1987)). The elements of a civil conspiracy claim are: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." Universal Coach, Inc. v. New York City Transit Auth., Inc., 90 Ohio App.3d 284, 292, 629 N.E.2d 28, 33 (Ohio Ct.App.1993).
Id. at 1153.

      Under Ohio law, a claim for spoliation or "interference with or destruction of evidence" has five elements:
      (1) pending or probable litigation involving the plaintiff,
      (2) knowledge on the part of defendant that litigation exists or is probable,
      (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case,
      (4) disruption of the plaintiff's case, and
      (5) damages proximately caused by the defendant's acts….
Smith v. Howard Johnson Co., 615 N.E.2d 1037, 1038 (Ohio 1993).

cannot show that Greco's out-of-court statements offered for the truth of the matter asserted are excluded from hearsay under Rule 801(d)(2)(E). Those statements are inadmissible hearsay and will not be admitted into evidence at trial. Because the statements are inadmissible hearsay, the court need not address whether reconsideration of its decision that the evidence is admissible under Rules 401 and 403 is warranted.

### c.  Loosli's Statement to Greco

Even if YPS could show that Greco's statements were admissible, it would also have to show that Loosli's statement to Greco that he wanted a $40,000.00 personal payment from YPS is admissible. Under Rule 801(d)(2)(D), YPS must show that Loosli was an agent of MarkWest acting within the scope of this employment when he made the statement to Greco. There is no dispute that Loosli was an agent of MarkWest at the time he allegedly made the statement to Greco. The record is bereft of evidence, however, that Loosli was authorized by MarkWest to request a personal payment from MarkWest's subcontracted businesses or that making such request was within his scope of employment. Under those circumstances, Loosli's alleged out-of-court statement offered to prove that he wanted a $40,000.00 personal payment from YPS cannot be offered into evidence against MarkWest under Rule 801(d)(2)(D), or, for the reasons detailed above, against MarkWest's alleged coconspirators, Black Bear and Kovacic, under Rule 801(d)(2)(E).

### III.  Conclusion

Good cause exists to modify the pretrial case management order and permit MarkWest to file a motion in limine at this stage in the case. The court construes

MarkWest's pending motion as a motion in limine to exclude YPS' evidence that Greco stated to Pelini and Canter that Loosli requested a $40,000.00 from YPS. That evidence is inadmissible because it constitutes double inadmissible hearsay. YPS did not satisfy its burden to show that Greco's and Loosli's statements are not hearsay or there exists an exception to the rule against hearsay. The testimony from Pelini and Canter about Greco's and Loosli's statements, including Loosli's alleged request to Greco for a personal payment of $40,000.00 from YPS, will not be admitted at trial. This ruling does not preclude under Rule 403 the introduction of other evidence by YPS about Loosli's allegedly unethical conduct related to the project at issue in this case; provided, however, the evidence is otherwise admissible under the Federal Rules of Evidence.

Based upon the foregoing, MarkWest's pending motion (ECF No. 313) will be granted to the extent the court construes the motion as a motion in limine to exclude the inadmissible double hearsay testimony of Pelini and Canter with respect to Greco's statements that Loosli requested a $40,000.00 personal payment from YPS. The motion is denied in all other respects. An appropriate order will be entered.

BY THE COURT,

Dated: July 29, 2021

JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge