**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BLACK BEAR ENERGY SERVICES, INC., | ) ) | |
| Plaintiff, | ) | Civil Action No. 15-50 |
| | ) ) | |
| v. | ) ) | |
| YOUNGSTOWN PIPE & STEEL, LLC d/b/a DNV ENERGY, LLC | ) ) | |
| Defendant. | ) ) ) | |
| | ) ) | |
| _____ | ) | |

| | | |
|---|---|---|
| YOUNGSTOWN PIPE & STEEL, LLC d/b/a DNV ENERGY, LLC, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| BLACK BEAR ENERGY SERVICES, INC., JOSEPH E. KOVACIC, III, MARKWEST ENERGY PARTNERS, L.P., OHIO GATHERING COMPANY, L.L.C., MARKWEST ENERGY OPERATING COMPANY, L.L.C., MARKWEST UTICA EMG CONDENSATE, L.L.C., MARKWEST UTICA EMG L.L.C., and MARKWEST LIBERTY MIDSTREAM & RESOURCES, L.L.C. | ) ) ) ) ) ) ) ) ) ) ) | |
| Counterclaim Defendants. | | |

**<u>OPINION</u>**

CONTI, Senior District Judge

I.      **Introduction and Background**

This diversity case arises out of a contract dispute between counterclaim plaintiff Youngstown Pipe & Steel, LLC, ("YPS") and counterclaim defendant Black Bear Energy Services, Inc. ("Black Bear").[1] Pursuant to the contract, YPS was to manufacture skid piping for Black Bear that allegedly complied with the standards set forth by counterclaim defendants MarkWest Energy Partners, L.P., Ohio Gathering Company, L.L.C., MarkWest Energy Operating Company, L.L.C., MarkWest Utica EMG Condensate, L.L.C., MarkWest Utica EMG, L.L.C., and MarkWest Liberty Midstream & Resources, L.L.C., (collectively "MarkWest"). This case is trial ready; indeed, the court resolved the parties' motions for summary judgment[2] and held a pretrial conference at which it resolved, among other things, the parties' motions in limine, and objections to exhibits. The following claims are set to be heard by a jury:

1.   YPS' breach of contract claim against Black Bear;

2.   YPS' breach of warranty claim against Black Bear;

3.   YPS' civil conspiracy spoliation claim against Black Bear, MarkWest, and Kovacic;

---

[1]      Joseph E. Kovacic, III, ("Kovacic"), who is the president of Black Bear, is also a named counterclaim defendant in this case.

[2]      The court granted summary judgment to MarkWest with respect to YPS' claims of fraudulent misrepresentation, fraudulent concealment, negligent training, negligent supervision, and unjust enrichment. The court granted summary judgment to Black Bear with respect to YPS' claims of fraudulent inducement to contract, fraudulent misrepresentation, and fraudulent concealment. The court granted summary judgment in favor of Kovacic with respect to YPS' claims of fraudulent misrepresentation and fraudulent concealment.

4.  YPS' tortious interference with contract claim against MarkWest;

5.  Black Bear's breach of contract claim against YPS; and

6.  Black Bear's breach of warranty claim against YPS.

After the court decided the parties' motions for summary judgment, YPS filed a motion for leave to file a second motion for summary judgment and for reconsideration of the court's order denying YPS' first motion for summary judgment. (ECF No. 283.) YPS argued that the court should permit YPS to file a second motion for summary judgment because YPS had newly discovered evidence that was "*potentially* case-determinative[.]" (ECF No. 283 ¶ 4 (emphasis added).) YPS explained that it obtained new evidence that Loosli, who inspected the skids and testified that he was a Certified Welding Inspector by the American Welding Society ("AWS-CWI"), "was not an…[AWS-CWI] either at the time of Loosli's 2015 Deposition or at the time of the events at issue in this case." (Id. ¶ 2.) YPS argued the new evidence was relevant to the claims in this case because, pursuant to MarkWest's internal policies and "the industry standard for fabrication of oil and gas processing pipeline, ASME B31.3 ("B31.3")[,]…the owner of the pipeline…[must] assign a qualified inspector (defined to be an AWS-CWI or a person with equivalent experience) to perform specific inspection duties and responsibilities…."  (Id. ¶ 3.a.) The court at the pretrial motions hearing denied YPS' motion for leave to file a second summary judgment motion or for reconsideration. The court explained:

> I went through each of the claims that remain and looked also at the dismissed claims to see whether this evidence concerning Mr. Loosli's not having a certification as a welder inspector would affect the outcome of that decision, in other words, whether it would be case dispositive as to that particular claim. And I could not find so when I went

through the various claims.

(H.T. 9/24/2020 (ECF No. 312) at 63.)

During the pretrial motions conference, the court also addressed MarkWest's argument that YPS in its pretrial submissions *for the first time* asserted it had evidence that Joseph Greco ("Greco"), vice president of business development for Black Bear, requested a $40,000.00 "gift" for Loosli from Vincent Pelini ("Pelini") and Mark Canter ("Canter"), both of YPS. The court in response to MarkWest's argument about this "newly" asserted evidence permitted MarkWest and YPS to conduct limited depositions of Greco and Pelini to address "any potential bribes being undertaken." (H.T. 9/24/2020 (ECF No. 312) at 38.)

After the pretrial conference, YPS and MarkWest conducted the depositions. MarkWest filed a motion for leave to file a motion in limine based upon Pelini's deposition testimony that Greco requested a $40,000.00 "gift" from YPS. After the matter was fully briefed, the court, among other things, construed the motion for leave as a motion in limine, and the granted the motion because testimony at trial by Pelini and Canter that Greco stated that Loosli requested a $40,000.00 personal payment from YPS was inadmissible double hearsay. The court explained that under Federal of Evidence 403 its ruling did not preclude the introduction of other evidence by YPS about Loosli's allegedly unethical conduct related to the project at issue in this case; provided, however, the evidence is otherwise admissible under the Federal Rules of Evidence.

Currently pending before the court is YPS' second motion for leave to file a second motion for summary judgment (ECF No. 325), which YPS filed before this

4

court decided MarkWest's motion for leave to file a motion in limine. In YPS' motion, it argues that the court should permit it to file a second summary judgment based upon evidence that: (1) that Loosli was not an AWS-CWI when he inspected and rejected the skids at issue in this case; and (2) Greco requested a $40,000.00 gift for Loosli from YPS. According to YPS, this evidence is "potentially" case dispositive. MarkWest opposes YPS' requests because the evidence upon which YPS relies is not case dispositive.

For the reasons set forth in this opinion, YPS' second motion to file a second motion for summary judgment will be denied. This court already held that the testimony by Pelini and Canter that Greco requested a $40,000.00 gift from YPS is inadmissible at trial. YPS may not, therefore, rely upon that evidence to prove it is entitled to summary judgment. This court decided at the pretrial conference that reconsideration of this court's ruling with respect to the parties' motions for summary judgment is not warranted by evidence that Loosli was not an AWS-CWI at the time he inspected and allegedly rejected the skids in this case. YPS did not satisfy its burden to show that reconsideration of that decision is warranted.

## II.    Discussion

YPS filed the pending motion to file a second motion for summary judgment after this court held that Pelini's and Canter's testimony that Greco requested a $40,000.00 on behalf of Loosli was double hearsay and, therefore, inadmissible at trial. YPS cannot rely upon that evidence in support of a motion for summary judgment. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of

summary judgment."). The only arguably admissible evidence relied upon by YPS in its second motion for leave to file a second motion for summary judgment is the evidence that Loosli was not an AWS-CWI at the time he inspected and rejected the skids. This court, however, denied YPS' first motion for leave to file a second motion for summary judgment, which was based upon the same evidence. The court, therefore, construes the pending motion for leave to file a second summary judgment motion as a motion for reconsideration of the court's ruling at the pretrial conference denying YPS' first request to file a second summary judgment motion based upon evidence that Loosli was not an AWS-CWI at the time he inspected and rejected the skids in this case.

### A. Applicable Law—Motion for Reconsideration

"Normally, motions for reconsideration are decided under Federal Rules of Civil Procedure 59(e) or 60(b)." In re Nat'l Forge Co., 326 B.R. 532, 541 (W.D. Pa. 2005). Those rules do not apply to YPS' motion for reconsideration, however, because it is seeking reconsideration of an *interlocutory* ruling, rather than a final judgment or order. Id. "It is well-established that the appropriate Rule under which to file motions for reconsideration of an interlocutory order is Rule 54(b)." Cezair v. JP Morgan Chase Bank N.A., Civ. Action No. 13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014); see Qazizadeh v. Pinnacle Health Sys., 214 F.Supp.3d 292, 298 (M.D. Pa. 2016) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)."). Federal Rule of Civil Procedure 54(b) provides, in pertinent part:

6

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).

A motion for reconsideration with respect to a final order or judgment must rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). The purpose of such a motion is "to correct manifest errors of law or fact or to present newly discovered evidence." Bootay v. KBR, Inc., 437 Fed.Appx. 140, 146-47 (3d Cir. 2011) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). A motion for reconsideration is not to be used to relitigate or "rehash" issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made. Williams v. City of Pittsburgh, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998); Reich v. Compton, 834 F.Supp. 753, 755 (E.D. Pa. 1993), aff'd in part, rev'd in part, 57 F.3d 270 (3d Cir. 1995); Keyes v. Nat'l R.R. Passenger Corp., 766 F.Supp. 277, 280 (E.D. Pa. 1991). In order to be successful on a motion for reconsideration, the movant must demonstrate a "definite and firm conviction that a mistake has been committed," or that the court overlooked arguments that were previously made. United States v. Jasin, 292 F.Supp.2d 670, 676 (E.D. Pa. 2003).

" 'While the standards articulated in Rule[ ] ... 60(b) are not binding in an analysis of Rule 54(b) motions, courts frequently look to these standards for guidance in considering such motions.' " Ampro Computers, Inc. v. LXE, LLC, Civ.

7

Action No. 2016 WL 3703129, at *2 (D. Del. July 8, 2016) (quoting Cezair, 2014 WL 4955535, at *1). Reconsideration of interlocutory orders, however, "may be had even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the 'need to correct a clear error of law or fact or to prevent manifest injustice.' " Qazizadeh, 214 F.Supp.3d at 298 (quoting Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).

"[T]he court may permit reconsideration whenever 'consonant with justice to do so.' " Qazizadeh, 214 F.Supp.3d at 298 (quoting St. Mary's Area Water Auth. v. St. Paul Fire and Marine Ins. Co., 472 F.Supp.2d 630, 632 (M.D. Pa. 2007)); United States v. Jerry, 487 F.2d 600, 604 (3d Cir. 1973) (" '[I]f an interlocutory decree be involved, a rehearing may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity.' ") (quoting John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 90-91 (1922)).

While "district courts have more discretion in reconsidering interlocutory orders than in revising final judgments," Foster v. Westchester Fire Ins. Co., Civ. Action No. 09-1459, 2012 WL 2402895, at *4 (W.D. Pa. June 26, 2012), the Third Circuit Court of Appeals has held that "[t]he trial court must, of course, exercise this authority in a responsible way, both procedurally and substantively," and that "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions." In re Anthanassious, 418 Fed.Appx. 91, 96 (3d Cir. 2011). Thus, courts should exercise this inherent power with a "light hand." Foster, 2012 WL 2402895, at *4 n.1. In discussing the scope of a district court's discretion to

reconsider an interlocutory decision, the Third Circuit Court of Appeals has held that while " '[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance ... as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.' " In re Pharmacy Benefit Managers, 582 F.3d 432, 439 (3d Cir. 2009) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).

### B. Analysis

YPS argues that reconsideration of this court's order denying its first motion for leave to file a second summary judgment is warranted to correct a clear error of fact because the court based its decision upon the erroneous conclusion that only MarkWest's internal standards required MarkWest to have an AWS-CWI inspect its skids.[3] YPS argues that OHIO REV. CODE § 4104.42, which references the standards set by The American Society of Mechanical Engineers ("ASME"), also required

---

[3]    As YPS points out, the court at the pretrial conference stated that whether Loosli was an AWS-CWI did not impact the court's decision to grant summary judgment to MarkWest. The court explained:

> And then the last claim would be the negligent training claim that was dismissed. I'm not sure how training is impacted by not having a certified welding instructor certificate. There were other standards. This was an internal standard, as I understand it, by MarkWest. It isn't a standard for training in the industry.

(H.T. 9/24/2020 (ECF No. 312) at 64.) YPS, however, did not object to the court's reasoning or correct the court's understanding of the applicable standards. Considering the presumption against reconsideration of interlocutory orders, reconsideration is not warranted based upon arguments that a party could have been raised before. Qazizadeh, 214 F. Supp. 3d at 296 ("A motion for reconsideration is not a vehicle to raise new arguments that could have been raised before the issuance of the order in question.").

MarkWest to have an AWS-CWI inspect the skids before they could be put into operation. (ECF No. 326 at 6-7.) YPS did not even attempt to explain in its second motion for leave to file a second motion for summary judgment why it is entitled to judgment as a matter of law because Loosli's was not an AWS-CWI at the time he inspected and rejected the skids. YPS argues that the court limited its second motion for leave to file a motion for summary judgment to ten pages and "the focus of a motion for leave is not on the merits but on whether movant should be granted leave to present a second summary judgment motion." (ECF No. 326 at 6.) As explained above, however, there is a presumption against reconsideration and the court must determine whether reconsideration is consonant with justice. This court cannot discern—and YPS did not explain—how Loosli's lack of qualifications as an AWS-CWI entitles YPS to summary judgment on its claims against Black Bear, MarkWest, and Joseph Kovacic, or on the claims asserted by Black Bear against YPS. Even if YPS is correct that MarkWest required an inspection of the skids by an AWS-CWI before the skids could be *placed into production*, it did not address why MarkWest required an inspection by an AWS-CWI before it could rightfully reject the skids under its contract with Black Bear. Under those circumstances, and considering the presumption against reconsideration and the expense to the parties to undergo another round of summary judgment briefing, the court cannot find that

reconsideration of this court's order denying YPS' first motion for leave to file a second summary judgment is consonant with justice.[4]

## III.    Conclusion

YPS did not satisfy its burden to overcome the presumption against reconsideration of interlocutory orders and show that reconsideration of this court's order denying its first motion for leave to file a second motion for summary judgment is consonant with justice. YPS' second motion for leave to file a second motion for summary judgment (ECF No. 325) will, therefore, be denied.   An appropriate order will be entered.

BY THE COURT,

Dated: October 12, 2021                    **/s/ JOY FLOWERS CONTI**
                                           Joy Flowers Conti
                                           Senior United States District Court Judge

---

[4]     For the same reasons, the court declines YPS' invitation to exercise equitable power to permit YPS to file a second motion for summary judgment. (ECF No. 326 at 8-10.)